DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, which granted a directed verdict in favor of appellees James M. Kiefer and Kim M. Kiefer. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} This case stems from a dispute between appellants Frank and Mary Witfoth and appellees James and Kim Kiefer over the sale of a home in Swanton, Ohio. At the center of the dispute is a well on the property, which appellants contend had such a low yield that they could not use water in the home in a normal fashion. Appellants contend that appellees should have disclosed to them before the sale that the well had a low yield. The case went to trial, and the trial court directed a verdict in favor of appellees, the sellers, at the conclusion of appellants' case-in-chief.
 {¶ 3} In 1998, appellants made an offer to purchase appellees' home in Swanton. The water supply for the home was a well, a fact disclosed on the Residential Property Disclosure Form that appellees completed in keeping with R.C. 5302.30. However, appellees made no other indication either orally or on the form about the well. Before closing, appellants hired a professional home inspector to inspect the property. However, this inspector does not inspect wells, and he told appellants this. He also advised appellants that they could hire a well inspector, but the type of inspection he contemplated was a water quality test, not a pump test to measure the well's yield. Nevertheless, the parties agree that it is possible to conduct such a test and appellants did not hire anybody to do so. Appellant Frank Witfoth indicated that he did not believe such a test was necessary because there was no indication on the disclosure form that the well was low-yielding.
 {¶ 4} Shortly after appellants moved into the house, they ran out of water. After hiring various companies to work on the well, appellants learned that the yield of the well was 1.5 gallons per minute, which, even with a 100 gallon holding tank, did not allow for back-to-back showers, consecutive loads of laundry, and so forth.
 {¶ 5} After learning of the well's low yield, and after having two loads of water trucked in, appellants hired a company to dig a new well. However, the water drawn from the new well had a high sulfur content, making the water malodorous and unsuitable for drinking. Appellant James Kiefer testified that the family "tolerated" the high sulfur water for showers, but the water turned the pipes black, corroded the hardware in the house (such as door hinges), discolored white laundry, and discolored all of the copper zippers on the clothes washed in the water. Eventually, appellants took to washing laundry at a relative's house and had to purchase water for drinking and cooking. Appellants hired two companies to chemically treat the sulfur water, but the results were unsatisfactory. Ultimately, appellants dug two new wells, which, when tied together, provided plentiful water of good quality. Appellants' expenses exceeded $18,000.
 {¶ 6} Sheila Nash, an employee of the Toledo Lucas County Health Department, testified at trial as an expert. According to Nash, the average well yield in a two mile radius surrounding the property in question is two and one-half gallons per minute. An approximate average for Lucas County is five to seven gallons per minute, an amount sufficient for normal family usage. However, Nash also indicated that this particular well was approved by the county and that, like other wells in the county, its yield is a matter of public record. Finally, she testified that there are no requirements in Lucas County dictating how much water a well should yield per minute.
 {¶ 7} Appellees contend that they were not required to disclose to appellants that the well had a low yield. First, they argue that there is no place on the disclosure form to
 {¶ 8} report such a condition. Second, they argue that the well was not defective: According to appellees, low yield wells are common in that area, and having a well requiring one to conserve water is simply a fact of country living. Appellees stated that they lived in the house for seven years with that well, and they learned how to time showers and laundry. (However, they conceded that, even with rationing, they still ran out of water on occasion.) Finally, appellees contend that appellants had a full opportunity to inspect the property, and the property was sold "as is."
 {¶ 9} Appellants filed suit against appellees in the Lucas County Court of Common Pleas alleging fraudulent representation and fraudulent concealment. Following the directed verdict in favor of appellees, appellants appealed, presenting the following assignment of error for our review:
 {¶ 10} "The trial court erred in granting a directed verdict to defendants."
 {¶ 11} Civ.R. 50(A)(4), governing directed verdicts, provides:
 {¶ 12} "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 13} The Ohio Supreme Court has stated that, while a motion for directed verdict requires the court to consider the evidence, such a motion presents only a question of law:
 {¶ 14} "whether there exists any evidence of substantive probative value that favors the position of the nonmoving party." Goodyear Tire Rubber Co. v. Aetna Cas. Surety Co., 2002-Ohio-2842,95 Ohio St.3d 512, at ¶¶ 3-4, reconsideration denied (2002),96 Ohio St.3d 1489. The Supreme Court has also noted that, since a motion for directed verdict presents only a question of law, appellate courts review de novo the trial court's decision on such a motion. Id.
 {¶ 15} Because resolution of this case requires us to consider several sometimes overlapping or related concepts, including the interplay between common law fraud and the disclosure form, the interplay between the doctrine of caveat emptor and the disclosure form, and the interplay of each of these with an "as is" clause, some background information is warranted. Prior to the enactment of R.C. 5302.30, situations such as this were governed by common law. Under common law, property defects were classified as either patent (obvious defects easily discoverable upon inspection) or latent (not obvious nor easily discoverable). See Davis v. Kempfer (Apr. 10, 1996), Union App. No. 14-95-31, discretionary appeal not allowed (1996), 77 Ohio St.3d 1422. The doctrine of caveat emptor provided that sellers of property were required to disclose latent defects unless the buyer agreed to take the property "as is." Id., citing Kaye v. Buehrle (1983), 8 Ohio App.3d 381,383. However, an "as is" clause only insulated the seller from a claim of non-disclosure; it did not relieve the seller from liability for fraudulent concealment or fraudulent misrepresentation. Davis, supra, citing Brewer v. Brothers (1992), 82 Ohio App.3d 148, 151.
 {¶ 16} R.C. 5302.30 dispensed with the distinction between patent and latent defects. Akl v. Maher (Dec. 30, 1996), Lucas App. No. L-96-125. Now, a seller must simply disclose all material defects of which he or she has actual knowledge. Montgomery v. Proper (Feb. 14, 1997), Huron App. No. H-96-019. We have also held, however, that the doctrine of caveat emptor still applies to defects not covered by the disclosure form. Id. Though we stated in Mongomery that the caveat emptor applies to latent defects not covered by the form, the doctrine certainly applies to patent defects as well. It has long been established in Ohio that caveat emptor applies to conditions that are "open to observation."Layman v. Binns (1988), 35 Ohio St.3d 176, 177, quoting Traverse v. Long
(1956), 165 Ohio St. 249, 252. See, also, Hanson v. Rieser (Nov. 9, 1999), Franklin App. No. 98AP-1390 (caveat emptor applies to patent defects not covered by the disclosure form).
 {¶ 17} Finally, R.C. 5302.30 does not provide a penalty for failure to disclose a material defect, Good v. McElhaney (Sept. 30, 1998), Athens App. No. 97 CA 41, nor does it provide a remedy for the buyer, see McCannv. Anastacio (Oct. 5, 2001), Portage App. No. 2000-P-0078. Therefore, a buyer's remedy for nondisclosure is limited to common law claims, id., typically claims for fraud. Nondisclosure in this context rises to the level of fraudulent concealment "when the duty to speak arises in order to place the other party on equal footing." Id., citing Arbor VillageCondo. Assoc. v. Arbor Village Ltd. (1994), 95 Ohio App.3d 499, 510, motion to certify record denied (1994), 71 Ohio St.3d 1406.
 {¶ 18} Appellants contend that appellees committed fraud when they failed to disclose the low-yielding well on the Residential Property Disclosure Form. The Supreme Court of Ohio has defined fraud as follows:
 {¶ 19} "(a) a representation, or where there is a duty to disclose, concealment of a fact,
 {¶ 20} "(b) which is material to the transaction at hand,
 {¶ 21} "(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 22} "(d) with the intent of misleading another into relying upon it,
 {¶ 23} "(e) justifiable reliance upon the representation or concealment, and
 {¶ 24} "(e) a resulting injury proximately caused by the reliance. * * *."
 {¶ 25} Burr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus.
 {¶ 26} In this case, appellants allege that appellees committed fraud by representing on the Residential Property Disclosure Form that there were no material problems with the water supply and by concealing the fact that the well was low yielding. With regard to water supply, the transferor is to indicate on the form the source of the water supply and whether the owner "knows of any current leaks, backups, or other material problems with the water supply system or quality of the water * * *." The form also contains a "catch-all" section where the transferor is to indicate any "other known material defects" on the property; according to the form, "material defects" would include "any non-observable physical condition existing on the property that could be dangerous to anyone occupying the property or any non-observable physical condition that would inhibit a person's use of the property." R.C. 5302.30(E)(1) requires that transferors complete the form "in good faith," which is defined in R.C. 5302.30(A)(1) as "honesty in fact."
 {¶ 27} The first question is whether the form, in fact, requires disclosure of a low-yielding well — in other words, whether the low yield was a "material problem with the water supply system" or a "material defect." It is undisputed that the well functioned properly, that it was approved by the county, and that it was not substantially lower yielding than other wells in the area. Certainly, the low-yielding nature of the well was inconvenient. However, coupled with the 100 gallon holding tank, and with judicious use, it still afforded a family the ability to shower, wash clothes, wash dishes, etc. Because we find that no reasonable person could consider this well a material defect or could consider the low yield to be a material problem with the water supply, we find that appellees were not required to disclose the low yield on the disclosure form.
 {¶ 28} Since we find that the disclosure form does not require disclosure of a low-yielding well, the next question is the doctrine of caveat emptor precludes recovery for fraud. See Montgomery, supra;Hanson, supra (caveat emptor still applies to defects not covered by the disclosure form). Under that doctrine, a buyer is precluded from recovering damages where:
 {¶ 29} "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor."
 {¶ 30} Layman, 35 Ohio St.3d 176, at syllabus.
 {¶ 31} It is undisputed that appellants had a full opportunity to inspect the premises, so the second part of the test is met. As for the first part of the test, courts have generally held that any condition that could be discovered upon reasonable inspection is open and obvious. See, e.g., Pickard v. Provens (July 12, 2000), Summit App. No. 19408 (low-yielding well was not a latent defect as its condition could have been discovered upon inspection, particularly where seller informed buyer that he was unaware of the well's condition as nobody had lived in the house for a year); Moravek v. Hornsby (July 14, 1997), Clermont App. No. CA96-12-113 (grading defects resulting in pooling water were open and obvious even in dry weather since the defects could have been discovered upon reasonable inspection); Belluardo v. Blankenship (June 4, 1998), Cuyahoga App. No. 72601 (water problems in basement open and obvious since there were obvious signs of "shearing" in the basement walls and recent repairs to the mortar in the cinderblocks, and since buyer had unimpeded opportunity to inspect). But, see, Hanson, supra (defect in crawl space not open and obvious when buyers were never shown crawl space, which could only be accessed by lifting up tacked-down carpeting in the closet of a back bedroom).
 {¶ 32} In this case, it is undisputed that appellants had a full opportunity to inspect the property, that a test exists to measure the yield of a well, that appellants did not order such a test, and that the yield of the well was public record. Given the circumstances, we conclude that no reasonable person could find that the yield of the well was not open and obvious.
 {¶ 33} As to the third part, absence of fraud, since appellees made no representations about the well, the only way they would be liable for fraud is if they had a duty to disclose the low-yielding nature of the well and they concealed it. We have already held that appellees had no statutory duty to disclose. Applying common law, we cannot say that nondisclosure amounted to fraudulent concealment in this case. The Ohio Supreme Court has held that if a defect is open and obvious, nondisclosure does not rise to the level of fraudulent concealment.Layman, 35 Ohio St.3d at 178. To rise to that level, the seller would have to have actively misrepresented a material defect. Id. Of course, that is not the case here. Because all of the requirements for caveat emptor are satisfied, the doctrine precludes appellants from recovering for appellees' nondisclosure of the low-yielding nature of the well. Appellants' assignment of error is not well-taken. Given our resolution of the fraud claim, it is unnecessary to discuss whether appellees are relieved from liability by operation of the "as is" clause.
 {¶ 34} Upon due consideration, we find that substantial justice was done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
Judgment affirmed.
Richard W. Knepper, J., Mark L. Pietrykowski, J., Judith Ann Lanzinger, J., concur.