LOOMIS, n.k.a. Nietrzeba, Appellant,

v.

TROKNYA et al., Appellees.

[Cite as *Loomis v. Troknya*, 165 Ohio App.3d 300, 2006-Ohio-731.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–05–1054.

Decided Feb. 17, 2006.

Joseph W. Westmeyer Jr. and Joseph W. Westmeyer III, for appellant.

David G. Grude, for appellees.

SINGER, Presiding Judge.

{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, following a bench trial on a claim for damages in a real-estate transaction. Because competent, credible evidence supported the trial court's finding that a purchaser failed to prove fraud, we affirm.

{¶ 2} A residential septic system consists of two basic elements: a septic tank and some type of leaching device. The septic tank is ordinarily a concrete vault into which effluent from the home flows. In the septic tank, solid waste settles to the bottom of the tank, while the liquid residue flows into a leach system. The most common leach system is a leach bed, consisting of a length of buried perforated tile through which waste liquid percolates, using the soil as a filter. A "dry well" is an alternative form of leaching system that is no longer acceptable under current health standards.

{¶ 3} In 1996, appellees, Ed and Kathy Troknya, negotiated to purchase a home situated on a 7.3–acre tract in eastern Lucas County. Prior to their purchase, the Troknyas hired a home inspector to look at the property. When the home inspector recommended a more comprehensive examination of the septic system on the property, the Troknyas retained Automatic Septic and Well Corporation, which reported, "The septic tank is located about 30' south of the home followed by a dry well. This type of leaching system does not comply with

current health department regulations." Accompanying the report was a $3,720 estimate for replacing the septic tank and installing a leach field.

{¶ 4} At closing, in a purchase-agreement addendum, the seller paid the Troknyas $3,720 to "install [a] new leach field and septic tank." Ed Troknya later testified that at some point he sought to have the septic-system work performed by Automatic Septic, but he cancelled the order when he determined that he was going to sell the property.

{¶ 5} In 1998, appellees listed the property for $179,900 with Cavalear Realty. In a residential-property disclosure form completed by Ed Troknya, under the "sewer system" category, a box marked "septic tank" is checked, with the notation that the septic tank was cleaned in summer 1997. A box labeled "leach field" is not marked. Under "drainage" is the notation "field floods occasionally behind the house."

{¶ 6} Appellant Christine Loomis, now known as Christine Nietrzeba, saw an advertisement for the property and contacted Cavalear Realty. A Cavalear agent arranged for appellant to visit the property.

{¶ 7} There is some dispute as to what was said during appellant's inspection of the property. It is undisputed, however, that during appellant's visit, Ed Troknya advised her that the septic system did not meet current code. On September 19, 1998, appellant submitted an offer on the property through execution of a "residential real estate purchase agreement." Appellant offered $150,000, with an added condition stating, "[L]ease [sic] field to be brought up to code at seller's expense."

{¶ 8} Appellees rejected appellant's offer, but countered with an offer to sell at $160,000. The counteroffer also deleted the condition that appellees pay to bring the leach field up to code. Appellant accepted appellees' counteroffer, subject only to appellees' execution of a document stating that they had "no knowledge of a date [by which the] septic and leach field system [would need] to be replaced." The sale closed and appellant took possession of the property in November 1998.

{¶ 9} Sometime later, appellant decided that she would like to construct a pond on her property. Construction of a pond falls under township zoning, but before the township will consider an application, the applicant must receive approval from the Lucas County Health Department. When a health inspector visited appellant, she advised appellant that the health department had no record of a leach field on the property. The inspector testified that older homes may have had septic systems installed prior to the permit requirement, and she further testified that appellant's home was built in 1935. Because of these facts, it was possible that there might be a leach field on the property, even though its existence had not been recorded. According to the inspector, she advised

appellant that appellant would have to point out the parameters of the leach bed in order to establish its presence. Alternatively, the inspector suggested, appellant could replace the admittedly antiquated septic tank and build a new leach bed.

{¶ 10} The inspector drew plans for the installation of a new 1,500–gallon-capacity septic tank with a leach bed on the sloping land behind the house. When appellant contacted an excavating contractor about building a system that would meet current code, she was advised that because of the amount of fill dirt that would be required on the slope, the cost would be in excess of $15,000.

{¶ 11} On July 25, 2000, appellant sued appellees and Cavalear Realty, alleging that they had misrepresented the condition of the property's septic system and wrongfully concealed the fact that the septic system had no leach bed. Moreover, appellant alleged, the sellers concealed the fact that they had previously been paid to remedy the situation, but had not. Appellant charged negligent and intentional misrepresentation against all defendants and a fiduciary breach against Cavalear.

{¶ 12} Following discovery, the matter came before the trial court on a bench trial. On January 10, 2005, the court ruled against appellant on all claims. This appeal followed.

{¶ 13} Appellant sets forth the following four assignments of error:

{¶ 14} "I. The trial court erred in finding that plaintiff/appellant knew of the problems with the leach field and septic system and therefore plaintiff/appellant could not have reasonably relied on defendants/appellees Troknya's and Cavalear Realty's misrepresentations and non-disclosures.

{¶ 15} "II. The trial court erred in failing to find that defendants/appellees Troknya's misrepresentations and non-disclosure of the defective septic system and existence and location of leach bed constituted fraud.

{¶ 16} "III. The trial court erred in failing to find that defendant/appellee Cavalear's misrepresentations and non-disclosure constituted breach of its statutory duties owed to plaintiff/appellant.

{¶ 17} "IV. The trial court erred in finding that plaintiff/appellant purchased the property 'as is.' "

## I. Fiduciary Breach

{¶ 18} Subsequent to the notice of appeal in this matter, appellant reached a settlement with Cavalear Realty. Those parties have filed a joint stipulation of dismissal with prejudice in this matter. Accordingly, appellant's third assignment of error is moot.

## II.   Caveat Emptor

{¶ 19} Appellant's remaining assignments of error concern factual findings that the trial court did or did not make.

{¶ 20} In Ohio, real property sold "as is" is subject to the doctrine of caveat emptor.   *Rogers v. Hill* (1998), 124 Ohio App.3d 468, 471, 706 N.E.2d 438. The doctrine bars recovery by a purchaser for a structural defect in real estate when "(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor." *Layman v. Binns* (1988), 35 Ohio St.3d 176, 519 N.E.2d 642, syllabus.

{¶ 21} A finding of a trier of fact will not be reversed on appeal so long as it is supported by some competent, credible evidence.   *C.E. Morris v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 22} In her fourth assignment of error, appellant asserts that the trial court erred in finding that her purchase of the property at issue was "as is."

{¶ 23} Admitted into evidence at trial was the purchase agreement executed by all parties to this transaction.   The agreement is in standardized form, containing at its very outset the warning "This is a legal agreement.   It is recommended that both parties secure the services of an attorney."   In the body of the prepared agreement, in two separate places, appear terms categorizing the sale as "as is."   There is no suggestion that the terms of the agreement had been altered or concealed or that the signatures on the agreement were not genuine. These facts are uncontested evidence by which the trial court could have concluded that the property was taken "as is."   Accordingly, appellant's fourth assignment of error is not well taken.

{¶ 24} In her first and second assignments of error, appellant suggests that the trial court erred in refusing to find that appellees misrepresented to her that the septic system included a leach field.   Such an assertion, appellant insists, constitutes fraud, which negates the protection that a seller obtains from the doctrine of caveat emptor.

{¶ 25} For there to be fraudulent representation, there must be (1) an actual or implied misrepresentation, (2) that is material to the transaction, (3) and made with the knowledge that the statement is false, (4) with the intent to mislead another, (5) who reasonably relies upon the misrepresentation, (6) resulting in injury.   *Southworth v. Weigand,* 8th Dist. No. 80561, 2002-Ohio-4584, 2002 WL 2027523, at ¶ 24.

{¶ 26} Much evidence was presented at trial as to the existence or nonexistence of a leach bed.   The son of the original owner of the property testified that there

was no leach bed. The county health inspector testified that she had to assume that there was no leach bed, unless she was shown its parameters. The contractor who made the original bid on upgrading the septic system testified that while there might be a dry well or leach tank on the property, its existence could not be ascertained for certain without digging up the system. Appellee Ed Troknya testified that he believed that there was a leach system. The trial court assumed that there was no leach bed.

{¶ 27} The trial court concluded, however, that it was immaterial whether appellant relied on express statements from appellees that there was a leach field, because appellees clearly disclosed that the septic system was not up to code and that there was a problem with the leach field. According to the court, this undisputed disclosure of a specific problem put appellant on notice and negated any reasonable reliance she might have on other statements or disclosure forms. Had she obtained an appropriate inspection of the property at that time, she would have discovered the extent of the problem.

{¶ 28} In our view, the trial court was correct. Appellant knew that there was a problem with the septic system. This is clearly shown by her original offer, which was conditioned on appellees' fixing the problem. Appellees rejected that condition.

{¶ 29} Once the problem with the septic system was disclosed, the extent of the problem was discoverable upon reasonable inspection. That appellant did not avail herself of the opportunity to have such an inspection performed by a qualified person does not negate the fact that the problem was disclosed. Moreover, it is not clear from the evidence that appellees had any superior knowledge as to the extent of the problem. Accordingly, appellant's remaining assignments of error are not well taken.

{¶ 30} On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal are awarded to Lucas County.

Judgment affirmed.

PIETRYKOWSKI and PARISH, JJ., concur.