DECISION AND JUDGMENT ENTRY
{¶ 1} Appellants, Michael and Susie Crooks, husband and wife, appeal the judgment of the Sylvania Municipal Court, which after a bench trial found them liable to appellees, Raymond and Diane Babiuch, also husband and wife, for non-disclosure of structural defects in a residential home purchase.
 {¶ 2} The trial court made the following findings of fact: *Page 2 
 {¶ 3} Michael and Susie Crooks purchased the property at issue in 1991. The house, along with hundreds of other homes in its subdivision, was constructed with Louisiana-Pacific Inner-Seal siding. Many houses with this siding began experiencing swelling, cracking, and mold. In July 2002, a flyer from Height Construction was distributed to the Crooks and other residents of their subdivision. It was titled, "How to Identify Louisiana-Pacific Inner-Seal Siding" and it offered a free inspection. Around this time, the Crooks' neighbor was having the siding replaced by Height Construction. Susie Crooks went to her neighbor's house and asked one of the workers to look at her siding; the worker told her that nothing was wrong with the siding.
 {¶ 4} In October, 2002, Ronald Height, owner of Height Construction, inspected the Crooks' property and gave the Crooks a replacement estimate. Ronald Height testified that it was his practice to only give an estimate if the siding on the property was defective, unless the owners request a bid in any event. The estimate itself did not indicate whether the siding was defective. The Crooks did not contact Height Construction to discuss the estimate.
 {¶ 5} In 2003, the Crooks decided to sell their home; it was first listed by a realtor, and then was "For Sale by Owner." Raymond and Diana Babiuch first saw the Crooks' home in September or October 2003. During one visit, Raymond Babiuch and Michael Crooks discussed the siding; Raymond told Michael that he noticed some houses in the subdivision were having their siding replaced and asked about the condition of the Crooks' home. Michael Crooks told Raymond that "it had been inspected a year ago and *Page 3 
was okay, but that if Mr. Babiuch had any doubts he should have the home professionally inspected." Michael Crooks did not tell Raymond Babiuch of the Heights Construction estimate.
 {¶ 6} Mr. and Mrs. Babiuch did not have the home inspected. On October 27, 2003, the parties entered into a purchase agreement. Paragraph 6 of the agreement provides that the sellers had no knowledge of any structural or latent defects, stating, "[purchaser is purchasing the property in its present `as is' condition." The Crooks also provided the Babiuchs with a residential real estate disclosure form, which did not indicate any problems with the siding.
 {¶ 7} Several months later, Raymond Babiuch sought an estimate to have the house painted and was informed that the siding needed to be replaced. He then called Height Construction and learned that Mr. and Mrs. Crooks had previously obtained an estimate. Mr. Babiuch subsequently had the siding repaired, at a total cost of $7,800.
 {¶ 8} The trial court held that Mr. and Mrs. Babiuch established the elements of fraudulent misrepresentation such that, despite the "as is" clause, they relied to their detriment on the Crooks' false statements that the structure was defect-free. It denied, however, the request for punitive damages and attorney fees, finding that the Crooks' conduct was not "aggravated or egregious."
 {¶ 9} Appellants assert two assignments of error for review: *Page 4 
 {¶ 10} "The trial court erred as a matter of law in granting judgment in plaintiffs favor since the manifest weight of the evidence does not support a finding of fraudulent misrepresentation.
 {¶ 11} "Plaintiffs' award of damages in the amount of $7,800.00 was not supported by sufficient evidence and, therefore, the trial court erred in awarding plaintiffs this amount."
 {¶ 12} First, appellants argue that the trial court erred in finding that they engaged in fraudulent misrepresentation and erred by not applying the doctrine of caveat emptor. We review the decision to determine whether it is supported by sufficient evidence. "When applying a civil manifest-weight-of-the-evidence standard, a court of appeals should affirm a trial court when the trial court's decision `is supported by some competent, credible evidence.'" Bryan-Wollman v.Domonko, 115 Ohio St.3d 291, 2007-Ohio-4918, ¶ 3, citing State v.Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 32. A finding of fact will not be reversed on appeal so long as it is supported by some competent, credible evidence. C.E. Morris v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. "[T]he trial court is in the best position to evaluate the testimony of witnesses and the evidence presented."Home Builders Ass'n of Dayton the Miami Valley v. Beavercreek (2000),89 Ohio St.3d 121, 129.
 {¶ 13} We begin with the "as is" clause in the purchase agreement. "In Ohio, real property sold `as is' is subject to the doctrine of caveat emptor. Rogers v. Hill (1998), 124 Ohio App.3d 468, 471. The doctrine bars recovery by a purchaser for a structural defect *Page 5 
in real estate when `(1) the condition complained of is open to observation or discoverable upon reasonable inspection, (2) the purchaser had the unimpeded opportunity to examine the premises, and (3) there is no fraud on the part of the vendor.' Layman v. Binns (1988),35 Ohio St.3d 176, 519 N.E.2d 642, syllabus." Loomis v. Troknya,165 Ohio App.3d 300, 2006-Ohio-731.
 {¶ 14} Ohio requires home sellers to disclose the condition of the property on a prescribed form "* * * designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred, including, but not limited to, the source of water supply to the property; the nature of the sewer system serving the property; the condition of the structure of the property, including the roof, foundation, walls, and floors; the presence of hazardous materials or substances, including lead-based paint, asbestos, urea-formaldehyde foam insulation, and radon gas; and any material defects in the property that are within the actual knowledge of the transferor." R.C.5302.30(D).
 {¶ 15} While the doctrine of caveat emptor relieves a seller from a claim of nondisclosure, it does not relieve them of the responsibility to refrain from making fraudulent misrepresentations. Witforth v.Kiefer, 6th Dist. No. L-02-1325, 2003-Ohio-6766, ¶ 14, citing Davis v.Kempfer (Apr. 10, 1996), Union App. No. 14-95-31, discretionary appeal not allowed (1996), 77 Ohio St.3d 1422; Brewer v. Brothers (1992),82 Ohio App.3d 148, 151. The trial court found that appellees pled fraud in their complaint, and appellants do not dispute this ruling on appeal. *Page 6 
 {¶ 16} "To prove fraud, a plaintiff must show that there was:
 {¶ 17} "`(a) a representation, or where there is a duty to disclose, concealment of a fact,
 {¶ 18} "`(b) which is material to the transaction at hand,
 {¶ 19} "`(c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
 {¶ 20} "`(d) with the intent of misleading another into relying on it,
 {¶ 21} "`(e) justifiable reliance upon the representation or concealment, and
 {¶ 22} "`(f) a resulting injury proximately caused by the reliance.'"Majoy v. Hord, 6th Dist. No. E-03-037, 2004-Ohio-2049, ¶ 19-26, quotingBurr v. Stark Cty. Bd. of Commrs. (1986), 23 Ohio St.3d 69, paragraph two of the syllabus; see also, Witforth v. Kiefer, supra, ¶ 17-24, quoting same.
 {¶ 23} The trial court applied these elements to appellees' claim and the evidence. It found significant the requirement that a plaintiff prove that the misrepresentation was made with "utter disregard and recklessness as to whether it is true or false" rather than whether the plaintiffs were able to show the defendants' actual knowledge. It also specifically found that Mr. Crooks possessed substantial evidence that the siding was, in fact, defective. Therefore, Mr. Crooks' statements that there were no problems with the siding were made recklessly, since he disregarded (and chose not to mention) the Height *Page 7 
Construction estimate he obtained, the flyer he received about the defective siding, and the fact that "hundreds" of homes in his subdivision had defective siding.
 {¶ 24} Appellants' arguments focus upon their lack of actual knowledge that the siding was defective because the estimate they received from Height Construction only gave a cost to replace the siding and did not specifically state that the siding was defective or that it needed to be replaced. They also point to Mrs. Crooks' reliance on the statement of the worker engaged in replacing her neighbor's siding and the fact that Height admitted he never directly informed the Crooks that the siding was defective. Be that as it may, the trial court correctly held that appellees were not required to demonstrate appellants' actual knowledge that the siding was defective. The trial court, as the finder of fact, was entitled to infer that Mrs. Crooks' reliance on such statement was unreasonable since she proceeded to seek an actual estimate to replace the siding. The court also found it significant that the Stone Oak Homeowners Association had requested Height to distribute the informational flyers regarding the defective siding and the fact that Height never gave a written estimate to a homeowner unless the siding was defective.
 {¶ 25} Regarding the other elements of fraudulent misrepresentation, the trial court found a representation where there was a duty to disclose. Mr. Crooks admitted in his testimony that he told Mr. Babiuch there were no problems with the siding, and the disclosure form indicated that the home did not have "structural problems." It found the fact that siding was defective and required replacement material to the transaction, since *Page 8 
the difference of thousands of dollars would likely factor into any home-buyer's decision. It further found appellees' reliance on those statements justifiable, citing Brewer v. Brothers (1992),82 Ohio App.3d 148, 152: "the buyer's duty to inspect the premises to discover defects terminates when representations are made with respect to a material fact in response to a buyer's direct inquiry." Notably, appellees did not dispute at trial that the siding defect was easily ascertainable only by an expert. In short, the trial court's decision that fraudulent misrepresentation occurred with respect to the defective siding was supported by competent, credible evidence. Appellants' first assignment of error is not well-taken.
 {¶ 26} In their second assigned error, appellants argue that the award of $7,800 in damages was improper because the only evidence was Mr. Babiuch's testimony. True, no documents or other exhibits substantiated the expenses he claimed; Mr. Babiuch claimed to have done "some" of the work and the painting. Height testified that he had driven by the house and saw it had been repaired. Appellants request reversal on the issue of damages since the award does not reflect expenses "actually incurred." They do not dispute, however, that the written estimates provided to both the Crooks and the Babiuchs were for $10,656,69 and for $11,686, respectively.
 {¶ 27} "It is fundamental to the law of remedies that parties damaged by the wrongful conduct of others are entitled to be made whole."Collini v. Cincinnati (1993), 87 Ohio App.3d 553, 556, citing, inter alia, Stranahan Bros. Catering Co. v. Coit (1896), 55 Ohio St. 398,415-416. A direct consequence of appellants' misrepresentation was the *Page 9 
necessity of replacing the defective siding. Moore v. McCarty'sHeritage, Inc. (1978), 62 Ohio App.2d 89. Since fraudulent misrepresentation is a tort action, appellees should also have been able to recover proximate damages. Miles v. Perpetual Savings Loan Co.
(1979), 58 Ohio St.2d 97, 99-100. This is not an action on a contract or account where the amount of damages is readily ascertainable, although it would have been had appellees elected to have someone else perform the work. Where damages are not readily ascertainable, the trier of fact may determine approximate amounts. See Modic v. Modic (1993),91 Ohio App.3d 775, 783, citing 25 Corpus Juris Secundum (1966), Damages, Section 28 (a well-accepted principle of tort law is that "once the fact of damage is established with reasonable certainty the plaintiff is given considerable latitude in proving the amount of the loss lest the wrongdoer escape his obligation to make restitution."). The amount claimed is significantly less than the written estimates in evidence, and appellees do not dispute that the amount they claimed placed them in the same position had the house not had defective siding. The second assignment of error is therefore not well-taken.
 {¶ 28} The judgment of the Sylvania Municipal Court is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 10 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Arlene Singer, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR. *Page 1