OPINION
{¶ 1} Respondent-appellant, L.E. ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, Probate Division, that granted Twin Valley Behavioral Healthcare-Columbus Campus ("TVBH"), authority to forcibly treat appellant with psychotropic medications.
 {¶ 2} On January 18, 2008, appellant was admitted to TVBH as an emergency admission. On January 23, 2008, Dr. Marion Sherman filed an affidavit of mental illness stating that appellant is a mentally ill person subject to hospitalization by court order. According to the affidavit, appellant, because of her mental illness, posed a substantial *Page 2 
and immediate risk of serious physical impairment or injury to herself as manifested by evidence that she is unable to provide for her basic physical needs. Dr. Sherman's affidavit indicated appellant was hospitalized due to psychotic symptoms that included paranoia and delusions. Based on the affidavit, the probate court ordered a hearing to be held on January 25, 2008. The probate court appointed a psychiatrist, J. Michael Oaks, D.O., as an independent expert to examine appellant. In addition, the probate court appointed an attorney to represent appellant. An involuntary psychiatric commitment hearing was held before a magistrate on January 25, 2008. The magistrate determined appellant was a mentally ill person subject to hospitalization, and appellant was placed at TVBH. Appellant filed objections to the magistrate's decision. Subsequently, on February 19, 2008, the probate court overruled said objections and adopted the magistrate's decision. No appeal was taken from this decision.
 {¶ 3} On February 4, 2008, an application for authorization to forcibly treat appellant with psychotropic medications was filed by TVBH. Counsel was appointed to represent appellant, and the probate court again appointed Dr. Oaks, as an expert to examine appellant. A hearing was held before a magistrate of the probate court on February 22, 2008. At the conclusion of the hearing, the magistrate granted the application for authorization to forcibly treat appellant with psychotropic medications. Appellant filed objections to the magistrate's decision. The objections were heard on March 3, 2008, at which time the probate court overruled appellant's objections and adopted the magistrate's decision.
 {¶ 4} This appeal followed, and appellant brings a single assignment of error for our review: *Page 3 
 THE TRIAL COURT'S DECISION GRANTING THE APPLICATION TO FORCIBLY MEDICATE APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 5} Appellant does not direct us to any particular part of the record, but instead suggests that the evidentiary burden to forcibly medicate appellant was not met.
 {¶ 6} As to civil judgments, "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279, syllabus. See, also, In the Matter of D.F., Franklin App. No. 06AP-1052, 2007-Ohio-617 (indicating the trial court's decision granting authority to forcibly medicate the appellant will not be reversed as against the manifest weight of the evidence if the decision is supported by some competent, credible evidence going to all essential elements of the case); In the Matter of K.W., Franklin App. No. 06AP-731, 2006-Ohio-731 (stating that an appellate court will not reverse a finding that a person is a mentally ill person subject to hospitalization under R.C. 5122.01 as against the manifest weight of the evidence if it is supported by some competent, credible evidence going to all the essential elements of the case).
 {¶ 7} When considering whether a civil judgment is against the manifest weight of the evidence, an appellate court is guided by a presumption that the findings of the trier of fact were correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. "[A]n appellate court should not substitute its judgment for that of the trial court when there exists * * * competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial judge." Id. at 80. *Page 4 
 {¶ 8} "The right to refuse medical treatment is a fundamental right in our country, where personal security, bodily integrity, and autonomy are cherished liberties. These liberties were not created by statute or case law. Rather, they are rights inherent in every individual." Steele v.Hamilton Cty. Mental Health Bd. (2000), 90 Ohio St.3d 176, 180-181, certiorari denied (2001), 532 U.S. 929, 121 S.Ct. 1376. See, also,Washington v. Harper (1990), 494 U.S. 210, 221-222, 110 S.Ct. 1028
(finding that a mentally ill prisoner possesses a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment to the United States Constitution).
 {¶ 9} "The right to refuse medication, however, is not absolute and it must yield when outweighed by a compelling governmental interest."Steele, at 181, citing Cruzan v. Dir, Mo. Dept. of Health (1990),497 U.S. 261, 278-279, 110 S.Ct. 2841. In Steele, the Supreme Court of Ohio held that under a state's parens patriae power, which allows it to care for citizens who are unable to take care of themselves, a state can override a mentally ill patient's decision to refuse psychotropic medications. Id. at 185, citing Addington v. Texas (1979), 441 U.S. 418,426, 99 S.Ct. 1804, 1809. The Supreme Court went on to state, however:
 * * * Before invoking this power, the state must first prove by clear and convincing evidence that the patient lacks the capacity to give or withhold informed consent regarding treatment. Whether an involuntarily committed mentally ill patient, who does not pose an imminent threat of harm to himself/herself or others, lacks the capacity to give or withhold informed consent regarding treatment is uniquely a judicial, rather than a medical, determination. If a court does not find that the patient lacks such capacity, then the state's parens patriae power is not applicable and the patient's wishes *Page 5 
regarding treatment will be honored, no matter how foolish some may perceive that decision to be.
Id. at 187. (Citations omitted, emphasis sic.)
 {¶ 10} "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere `preponderance of evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 11} The Steele Court went on to state:
 * * * [A] court may issue an order permitting hospital employees to administer antipsychotic drugs against the wishes of an involuntarily committed mentally ill person if it finds, by clear and convincing evidence, that (1) the patient does not have the capacity to give or withhold informed consent regarding his/her treatment, (2) it is in the patient's best interest to take the medication, i.e., the benefits of the medication outweigh the side effects, and (3) no less intrusive treatment will be as effective in treating the mental illness.
Id. at 187-188.
 {¶ 12} At the hearing before the magistrate on TVBH's application to forcibly treat appellant with psychotropic medications, the court heard testimony from Sitabem Parbhoo, M.D., a staff psychiatrist and appellant's treating physician at TVBH, and Dr. Oaks, the psychiatrist appointed by the probate court to examine appellant. In addition, appellant testified on her own behalf.
 {¶ 13} Dr. Parbhoo stated she has been treating appellant since her admission to TVBH on January 18, 2008. Dr. Parbhoo opined to a reasonable degree of medical certainty appellant lacks capacity to make an informed medical treatment decision. *Page 6 
According to Dr. Parbhoo, appellant is "paranoid and delusional and suspicious" about all pharmaceutical pills and believes they are all toxic and poisonous. (Feb. 22, 2008 Tr. at 7.) Dr. Parbhoo explained that she believes the treatment regimen she is proposing will decrease appellant's delusional paranoia and suspicious feelings and assist appellant in getting back into the community. Dr. Parbhoo indicated there were additional medications to choose from if the initial treatment was not effective. In addition, Dr. Parbhoo described the potential side effects of the treatment regimen, and explained medications were available to treat side effects should they occur. Dr. Parbhoo described appellant would be monitored for side effects via the 24-hour nursing and physician staff at TVBH, as well as laboratory tests if needed. In Dr. Parbhoo's opinion, the benefits of her proposed treatment plan outweighed the probable side effects. When asked if she was aware of any lesser intrusive treatment alternatives to the medication regimen she proposed, Dr. Parbhoo stated appellant "has been attending activity groups and everything, but she just does not focus on her illness or her problem." Id. at 9.
 {¶ 14} Dr. Oaks reviewed appellant's medical records and attempted to interview appellant prior to the hearing, but according to Dr. Oaks, appellant would not cooperate with an evaluation. Dr. Oaks opined to a reasonable degree of medical certainty that appellant lacked capacity to make an informed medical treatment decision. Dr. Oaks testified that the basis of his opinion was:
 [Appellant] suffers from a substantial thought disorder, manifested by severe paranoia, which causes her to misinterpret the intentions of others, causes her to have no insight into the fact that she is mentally ill, and therefore she doesn't recognize that she needs treatment.
Id. at 19-20. *Page 7 
 {¶ 15} Dr. Oaks testified he was not aware of any lesser intrusive treatment alternatives to the one proposed by Dr. Parbhoo, and Dr. Oaks agreed with Dr. Parbhoo that the benefits of the proposed treatment plan outweighed the probable side effects. On cross-examination, Dr. Oaks was asked how long appellant would remain hospitalized if she were put on medication. Dr. Oaks responded, "I think it would be not less than three or four weeks, possibly longer, possibly six to eight weeks." Id. at. 24-25.
 {¶ 16} Appellant testified that she has a "sensitivity and intolerance to all pharmaceuticals." Id. at 26. Appellant stated she informed the staff at TVBH of her condition and need to avoid chemicals contained in both medications and foods. According to appellant, she ate some food at TVBH and "had an immediate drop in blood pressure * * *." Id. Appellant testified as to her belief that not "any of the people here on my treatment team, specifically, are qualified to make a judgment, an adjudication, on me as being mentally ill or having to be forced to take psychotropic medications." Id. at 28.
 {¶ 17} Upon careful review of the record, we find the probate court's judgment is supported by some competent, credible evidence. The uncontroverted medical evidence provided by the testimony of both Dr. Parbhoo and Dr. Oaks, supports the probate court's findings and conclusions that by clear and convincing evidence, appellant lacks capacity to make informed decisions about her treatment, that the benefits of the proposed treatment regimen outweigh the potential side effects, and that no less intrusive treatment would be effective. As such, we cannot say the probate court's decision is against the manifest weight of the evidence. *Page 8 
 {¶ 18} For the foregoing reasons, we overrule appellant's single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas, Probate Division.
Judgment affirmed.
 BRYANT and BROWN, JJ., concur. *Page 1